PROBERT ET AL. *v.* GARRETT, EXECUTOR ET AL.

[No. 90, September Term, 1959.]

*Decided December 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Alfred L. Scanlan,* with whom were *Shea, Greenman & Gardner* on the brief, for the appellants.

*Andrew T. Altmann,* with whom were *Garrett, Altmann & Flather* on the brief, for the Executor, one of the appellees.

*John W. Neumann,* with whom were *E. Richard McIntyre* and *Jones, Mathias & Neumann* on the brief, for the purchaser, the other appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court for Montgomery County ratifying a sale of certain real estate sold by an executor over objections raised by two of the legatees, the appellants here. They contend that the executor failed to use due diligence in effecting the sale, and that the price obtained was inadequate.

The will in question authorized and directed the executor to sell all the testator's property "at public or private sale at such price as he shall consider adequate, without application to or order of any Court * * *." The executor named, Mr. Garrett, was an attorney, a member of the bar of the District of Columbia, but not of Maryland. He had been the business and professional adviser of the testator for twenty-five years, and was familiar with land values in and about Washington. The principal real property owned by the testator is a parcel of land in North Takoma Park, Maryland, containing about 4.1 acres. Although the tract is zoned single-family residential, it is located about 500 feet from a commercial zone, and near other properties zoned for multi-family occupancy. It had on it an old dwelling and greenhouse (which was sold and removed), but it was most valuable as building sites.

Following the death of the testator, the executor was granted letters on May 21, 1957. The property was appraised by the official appraisers at $54,000. On May 27, 1957, the executor obtained an independent appraisal in the amount of $50,000. He then communicated with a number of real estate brokers, offering the property for sale. It was shown that he wrote more than 100 letters to various brokers, made numerous phone calls, and was active in showing the property. Thereafter, he negotiated a sale to Park Offices, Inc. for $85,000, contingent upon the property being rezoned from single-family residential use to multi-family use. However, the application for rezoning was finally denied by the County Council in November, 1958. Thereupon, the executor again listed the property for sale with a number of brokers, and on March 20, 1959, received a firm offer of $50,000 from

Van Vleck Properties, Inc., which he accepted. This was by far the best offer he had received for the property, as zoned, the best previous offer being $40,000. It may be noted that one of the appellants, a legatee, twice submitted bids at figures below $40,000.

The appellants rest their claim of a lack of diligence on the following facts: that when the property was first offered for sale, the executor communicated with a Mr. Casey who represented the B. F. Saul Co., a real estate and mortgage investment firm. A letter from this company to the executor stated that their preliminary study indicated that the property might be subdivided into fourteen (14) lots which "should be worth up to Sixty Thousand Dollars if offered on the market as a packaged deal to a builder including all financing for purchase and construction." No offer was submitted at that time. Mr. Casey testified that he told Mr. Garrett that if the property had to be sold "subject to the order nisi procedure of the Maryland Courts", B. F. Saul Co. would not be interested. Mr. Garrett replied that it was offered on that condition. Although he had worked with brokers in Prince George's County for some years prior to his association with B. F. Saul Co., Mr. Casey was under the impression that this meant that, even after the signing of a contract, new bidders could "come in" on the day set for ratification and "overbid the property by ten per cent," which was the practice in the District of Columbia, but is not the practice in Maryland. See *Blank v. Frey*, 165 Md. 647, 650, and *Cook v. Safe Dep. & Tr. Co.*, 172 Md. 398, 405. The record does not show that this misconception was shared by the executor. However, the executor testified, on cross-examination, that he was not then aware that under Code (1957), Art. 93, sec. 327, a sale of real estate could be ratified without an order nisi if "all parties in interest are sui juris and their consent is given to such immediate ratification." This provision was called to his attention by his law partner some time later, and he did in fact recite in his report of the sale to Park Offices, Inc., that all the legatees under the will consented to the $85,000 sale and asked immediate ratification, subject to the proposed rezoning. The Orphans' Court ratified this sale

on condition, but the order was subsequently rescinded, when rezoning was denied, some six months later. When this sale fell through, the executor wrote to B. F. Saul Co., among other brokers, but he did not call Mr. Casey's attention to the possibility of immediate sale by consent. The property was, in fact, offered subject to order nisi.

Mr. Garrett admitted that after he received the offer from Van Vleck Properties, Inc., subject to acceptance within three days, the attorney for one of the legatees phoned and reminded him that B. F. Saul Co. had previously indicated an interest in the property at $60,000. His reply was that B. F. Saul Co. had never made an offer, that it had merely made a suggestion as to asking price, subject to conditions as to financing which he thought unacceptable, and that it had shown no genuine interest in the property. However, on April 6, 1959, at the insistence of the legatee's attorney, B. F. Saul Co. did submit an offer of $60,000. This offer was "not subject to an order nisi", and it was subject to "purchaser obtaining a First Trust equal to sixty per cent of the purchase price". On April 16, another offer of $60,000 was submitted, "all cash", and "subject to ratification by The Orphans' Court, but not by an 'order nisi' procedure." This, of course, was after the Van Vleck contract had been signed on March 23, 1959, subject to ratification by the Orphans' Court.

The court below found no fatal lack of diligence, and we agree. It is conceded that in obtaining an independent appraisal, in soliciting bids, and in his negotiations with a large number of brokers, the executor fully met the test of diligence laid down in the cases. Cf. *Standish Corporation v. Keane*, 220 Md. 1, *Webb & Knapp v. Hanover Bank*, 214 Md. 230, *Knight v. Nottingham Farms, Inc.*, 207 Md. 65, *Gilden v. Harris*, 197 Md. 32, and cases therein cited. The cases make it clear that the mere fact that, after a contract of sale is signed and reported, a higher bid is received, will not justify the court's declining to ratify the sale. We also agree with the court below that the executor exercised sound business judgment in accepting the Van Vleck offer under the circumstances stated.

The appellants argue, however, that the executor failed in his duty of diligence, because he did not know of the consent procedure and failed to notify Mr. Casey after he was informed of it. They also argue that the executor, as an attorney, was under a higher duty than a layman. But, as we have noted, the record does not show that Mr. Garrett was aware of Mr. Casey's misconception of the Maryland law relating to orders nisi in sales by an executor, which was apparently the basic reason for his lack of interest. As the court below noted, the order nisi procedure is the usual and customary one in Maryland, and sales by consent are seldom resorted to. Indeed, it is probable that legatees themselves ordinarily prefer to have court ratification, rather than to take the time and make the personal investigation necessary to an informed consent, particularly if they are unfamiliar with local values. There is the further point that in the instant case one of the legatees was an active bidder for the property. Under the circumstances, we cannot find a lack of diligence in the executor's insistence on an order nisi, particularly where no firm offer had been made for submission to the legatees. It may well be that such submission would involve more delay than the order nisi procedure. The argument based on the fact that the executor was a lawyer loses some of its force, because the executor was not admitted to practice in Maryland. The appellees deny that there is any higher duty upon a lawyer than upon a layman executor, citing *Goldsborough v. DeWitt,* 171 Md. 225, 262, where the duty of a lawyer executor was described as the exercise of "the diligence and care of reasonably prudent men in the management of their own affairs under similar circumstances". Cf. *Mosely v. Verner,* 110 So. 895 (Ala.). In any event, we think it was not shown that ignorance of the law, on the part of the executor, contributed to the mistake of the potential bidder in the instant case, or that knowledge of the mistake was brought home to the executor prior to his acceptance of the Van Vleck offer.

*Order affirmed, with costs.*